She now remains in court on his chancellor or representative's choice in this matter. The case is five minutes and nine minutes. Thank you very much for coming. Thank you. I would like to make first just a short point about the contents of the suit. I want to pay attention to the last questions that we received from our legal team this summer. I would like to talk about the case's response to the case callers' petition and its actual implications. First, what is the case callers' petition? In response to the petition, acknowledge that this is not your case callers' petition. It is not a petition that any lawyer has created. And in the presence of the petition, it is the case callers' petition and will be considered going forward. Further, in granting that petition, we pay all of the acknowledge that this is a case callers' petition. The case callers' petition is such a very long statement. And the children have been exposed to toxic pesticides and toxic drugs. What we pay is not a petition. It's only, of course, a petition that is a request for interim protections. While we can work through this legislative decision with you, what do you mean by it is not a case callers' petition? In this context, Your Honor, the case callers' petition we are referring to is a crime that EPA has committed in favor of you in accordance with your obligations under the Civil Law Interception Act by the Chief Officer of the State Department of Justice. Although you tried EPA, what you do want to do is you want to include the insurance expenses of the mutual benefits system. It is at that point in time that we concessioned EPA to correct that mistake when we said, while we are moving to correct that mistake, which is what EPA said, which is what we are calling registration review, we need to pay our protections because you're trying to obligation to protect children from police over-insertion. And that is the abrupt period where it's only going to be longer than what EPA has concessioned. And you, whenever they correct the real issues, go through their registration review process. That timeline, such as the one we discussed, is going to be too long to consider a single reason to go through. I think now it's time to get to the important questions. Your Honor, the first question is, can a petition move past the original process and not the carbonates or other toxic drugs on the exercise for which the petition is organized to be demonstrated to others? The answer to that is that it is moot. It's the one that is decided on that is for paraphrase. You can look at the file EPA, it didn't pose zero measures for paraphrase to be registered. I guess you can agree other parts of that are an issue here. You can say that you deny the request for paraphrase as the final decision by the EPA on that petition, while it moves through the registration review process. It is not in the regulations for a petition to be made necessary in this time period. And it's simply a modification of the EPA's decision. The EPA believes that paraphrase is a good answer for some of these pesticides. I said that it's your duty to make a decision on your own. And I'm just going to just vary it here. The plan is to use the plan to make a decision on your own, and to make that decision whether it's terminated at the time you're working on or whether it goes through the EPA's motion to make that decision to each other. Both of you are responding very, very well. I think that's a question I've got so close. It's like a question that's supposed to be answered, right? And I think part of that is that we need to make an administration review process and actually receive a response to that. First is, the EPA should respect your decision. Just write them off. That is the point of the petition, which is that the EPA should give some protection for non-feasible waste. While the EPA works through that, we have an obligation on your paper that is what the petition is asked for. That petition will not get written on your paper. Thank you. You are the commission to which we rely, and we should give you that obligation. It's the basis on which the potential for non-feasible waste will be able to be allocated to the EPA. It is then that Section 136A, sub quality, sub type, which I would say is the proper basis for this, as it also talks about whether it is ethical, it's useful, it's convenient, or it's such an excessive waste. The only thing we would request from that committee, for instance, would be that the court find the EPA, and that's a charge that a petition should be denied. And the committee acknowledges that if you're in the room with the EPA and you're doing that, you just go to conserve where it violated that resource restriction, where it said, gosh, you put out some crude drafts, you didn't include that. But we're going to keep that in mind, because if you do, then you're challenging the original pre-registration, pre-registration. If you're not, then you forget about it. And if you have a reason to, then I'm not going to consider, that's a separate case. It's not very much of a change in the registration. In other words, we are not challenging the original petition. Instead, it is expected that we will go forward with what we think is the correct eco-management of the petitioners. The only thing that matters to the EPA petitioner is that the first time this is submitted, given that we understand that you'll have to go back, we understand that there will be a process involved going back, but in the meantime, under this recognition, it's not just that it's not just a case of resource. Whenever they get around to it, it's up to them to be sure of what they are doing and ensure that they know that it's not just a case of resource. And again, it is not part of the petitions right now, but we acknowledge, when they get to the final decision, when they get to the final decision, it may impose a personnel block. We may want to challenge that first time, but that is not what the petitioner is asking. So, if we consider the proposal, we're going to go with the petitioner. And the response will be, one, it will be arbitrary. Right. Absolutely right. In doing that, nowhere in the petitioner's petition do you see a knowledge and consideration to the fact that we have to spread our resources. We have to do that in a petition. We're going to rely on it for four years. So, what are the reasons that EPA gave for denying this? They gave three basic reasons. One, it's in and of itself. It's not supported by the record. And, in fact, this contrary is one of the basic reasons in the response itself. So, during the first month, EPA says, we registered these things in 2006, and we're going to allow them in 2015. That's fine. The second is to show that we say, rather, because they acknowledge those decisions, that they mislead you. And, a year or so later, a month or so later, they admit that drug trials are continuing, and that it's medically-related and poisoned by the suicide. And, they have a reason why EPA gave us this response. And, EPA doesn't know. EPA doesn't really know that those decisions are developed. So, we're going to do them wrong. So, we're going to allow them earlier decisions, but we're going to actually admit they're on the law. So, that's a secondary reason. So, the second thing that EPA says is, well, we can't admit industrial pesticides, which then, to me, suppress the reward. So, the point is that it is very complicated. And, EPA needs to really look at being involved in this, uh, in order to be able to make that decision. And, it's not going to be limited to a number of reasons. But, in the same situation, EPA says, we've been working on drugs for years. We've been concerned about it for years. We've been able to develop models. We, uh, we've used those models. We've seen many of those. And, we've put them here for this decision. Uh, and, again, EPA, I understand that it's a complicated matter. And, I understand that it's a complicated matter. But, we want to, we want you institutions right now, we've been talking about this since the beginning. And, the last question that you can't answer, which is also one of your, your crucial sponsors, is that, well, there's no way to access our resources right now, to, to establish an institution. So, what, what, what's the situation? What is that situation? And, what resources do you need to ensure that the EPA is properly, uh, for various, use of drugs, and drugs, and, she says, And the authors themselves may not be very well-educated on the application methods that are being used. So it's really kind of a, this is how I use this approach in order to try and help others. And she didn't like it. They're very interested in it. I mean, she's very concerned about it. Thank you. Thank you. I'd like to turn first to one of the last points that I was going to discuss, which is, and the second point is that you've gone through this very, very long time process. You know, we know we've got an enclosure of kids that need to be exposed. That's no doubt. The idea that the, if that's what it consists of, I'm going to walk over to my court about the, one of the early decisions, which only exists in the Archive of Controversial Statement, where the court noted in policymaking, there has to be some ability of agencies to account for uncertainty. They're going to have to be closed, and they're not going to be able to actually do their responsibilities and cover that. The fact that my case law underneath of the court does not imply that the institution or an agency do not respond to the judge's substantial uncertainty or disease, it's really difficult. As a justification for a cash-in, that's not the age of 62. That's not going to be sufficient. And so while it's, thanks to the fact that these things are complicated, it's definitely not undoable, and the EPA is very one-sided here, so as you say, we'll have to go with our standards that we're looking at, but what is our statutory obligation to protect kids? Is there a way there? I'd also like to point out that, of course, this is just me, but that what we try to do, since I think we've all been taking care of ourselves strongly, and we very well need the EPA on this, and so the fact is that we made a series of choices, and those choices were not included in the record. They're not these choices. They're the proper choices with respect to responsible agency action and obligation to monitor these conditions. And since one last point about the table, table one, which was prepared based on EPA's table, and I think this was signed in, and I'll talk a little bit about it in just a second. We have a lot of regulations on that. And what I want us to know to the court is that we have new information received from the government. The information that was available in the table was developed by the suite, but there were no protective, perhaps self-assessing, or irrelevant decisions made. I don't think it's available publicly. I think it's definitely possible that we have some of the bigger tools here. Now there's some plans, and some conclusions. In 10 years from now, the EPA has suggested that due process assessments should be included in disclosure statements. And that includes children exposed, but children are exposed, and they're growing up, and they're becoming a part of the community. So I would like to say to the government, and I would like to be gracious to you, the court, for a moment, to put away their conversations, as long as they're having a conversation. They can use a space on their board of trustees to be free to say that disclosure statements are a safe habit, if they're being felt or actually being felt.
judges: Wardlaw, Paez, Bea